BAKER MARQUART LLP
Ryan Baker (SBN 214036)
    rbaker@bakermarquart.com
10990 Wilshire Blvd., 4th Floor
Los Angeles, California 90024
Telephone:  424.652.7800
Facsimile:  424.652.7850

YARMUTH WILSDON PLLC
Scott T. Wilsdon (applying *pro hac vice*)
    wilsdon@yarmuth.com
Jeremy E. Roller (applying *pro hac vice*)
    jroller@yarmuth.com
818 Stewart Street, Suite 1400
Seattle, Washington 98101
Telephone:  206.516.3800
Facsimile:  206.516.3888

Attorneys for Plaintiff DIRECTV, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTV, LLC, a California limited liability company,<br><br>        Plaintiff,<br><br>        v.<br><br>TVEYES, INC., a Delaware corporation,<br><br>        Defendant. | **No.**<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

        Plaintiff DIRECTV, LLC, a California limited liability company

("DIRECTV"), by and through its undersigned attorneys, alleges as follows:

# INTRODUCTION

1.  DIRECTV is the leading direct broadcast satellite television service provider in the United States with more than 20.4 million residential and commercial subscribers.  DIRECTV brings this action against defendant TVEyes, Inc. ("TVEyes") for obtaining DIRECTV satellite television programming by false pretenses, recording that programming on equipment and for purposes not authorized by DIRECTV, and retransmitting and distributing that programming to TVEyes' customers, in violation of DIRECTV's subscriber terms and federal law.

2.  TVEyes' actions violate the Federal Communications Act, 47 U.S.C. § 605.

3.  DIRECTV brings this action to restrain these illegal activities and for damages and other relief described in this Complaint.

# PARTIES

4.  DIRECTV, LLC is a limited liability company organized under the laws of the State of California.

5.  TVEyes, Inc. is a Delaware corporation with offices in Fairfield, Connecticut.  TVEyes owns and operates a website located at http://www.tveyes.com and offers what it describes as "broadcast monitoring services."  Upon information and belief, the services offered by TVEyes include recording and distributing television broadcasts that were obtained from DIRECTV without valid or proper authorization.

COMPLAINT

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, because this action involves claims brought under federal law:  the Federal Communications Act, 47 U.S.C. § 605.

7.     Defendant is subject to personal jurisdiction in this Court because it has engaged in business in California and has purposefully aimed and directed its activities at California from which the claims asserted in this Complaint arise.  Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to DIRECTV's claims occurred here.

## FACTUAL BACKGROUND

8.     DIRECTV is the nation's leading direct broadcast satellite system, delivering hundreds of channels of digital entertainment and informational programming to more than 20.4 million residences and businesses equipped with specialized DIRECTV receiving equipment.

9.     DIRECTV programming currently includes major cable networks, major studio movies, local broadcast stations in most markets, special event programming offered on a pay-per-view basis, and a variety of other sports and special interest programs and packages.   In addition to original programming created by DIRECTV, DIRECTV contracts and pays for the right to distribute programming and entertainment content to its subscribers, and holds license rights under the Copyright Act to exhibit the programming to its subscribers.

10.     DIRECTV operates broadcast centers in California and Colorado that are used to distribute its programming to DIRECTV subscribers.  At the broadcast centers

COMPLAINT

1  and local collection facilities, DIRECTV digitizes and compresses its programming
2  into a signal that is encrypted (electronically scrambled) to prevent unauthorized
3  viewing of the programming.  DIRECTV then transmits the encrypted signal to
4  satellites located in stationary orbits approximately 22,300 miles above the Earth.

5       11.    The satellites relay the encrypted signal back to Earth, where it can be
6  received by subscribers equipped with DIRECTV satellite receiving equipment.  The
7  signal is received by the subscriber's satellite dish and transmitted by cable wire to an
8  integrated receiver/decoder ("Receiver").  The Receiver is a box approximately the
9  size of a VCR or DVD player and acts like a computer to process and decrypt the
10 incoming signal using the credit-card-sized DIRECTV Access Card that is loaded
11 through a slot on the front or back of the Receiver.

12      12.    DIRECTV Receivers and Access Cards are assigned unique serial
13 numbers, and those numbers are used by DIRECTV to activate the satellite receiving
14 equipment and to ensure that the equipment decrypts DIRECTV programming in
15 accordance with the subscriber's authorized subscription package and pay-per-view
16 purchases.

17      13.    The activation process involves linking each Access Card to a valid
18 DIRECTV subscription account.  Upon activation by DIRECTV, software is
19 transmitted via satellite to the subscriber's Receiver and Access Card.

20      14.    DIRECTV distributes the satellite receiving equipment, including
21 Receivers and Access Cards, to subscribers for the sole purpose of enabling legally
22 authorized access to DIRECTV television programming.

23

COMPLAINT

-- 4 --

15.     DIRECTV incurs significant costs in connection with its acquisition of new subscribers ("Subscriber Acquisition Costs").  Subscriber Acquisition Costs include, but are not limited to, equipment subsidies paid by DIRECTV to manufacturers of the Receivers, Access Cards and satellite dishes that are distributed to subscribers at less than actual cost.  Subscriber Acquisition Costs also include commissions, fees and other compensation paid by DIRECTV to national retailers, independent dealers and other authorized dealers in connection with subscriber accounts they originate.  DIRECTV expects to recoup these costs through subscriber payments to DIRECTV for programming and other services over the life of the account.

16.     DIRECTV provides television programming services to qualifying customers in the United States.  By way of example, a business wishing to subscribe to receive DIRECTV programming is required to create a commercial subscription account with DIRECTV and agree to the terms of the Commercial Customer Agreement or, prior to June 24, 2014, the Commercial Viewing Agreement.  To create an account, a commercial subscriber is required, among other things, to identify truthfully the address where the satellite receiving equipment will be located and where the programming will be viewed ("Service Address").

17.     The Commercial Customer Agreement and the Commercial Viewing Agreement govern viewing and use of DIRECTV programming by commercial subscribers.  Those agreements strictly forbid any rebroadcasting, transmitting or distribution of DIRECTV programming to others, or any viewing or use of that programming at a location other than the Service Address listed on the subscriber's

COMPLAINT

1    account.  Commercial Customer Agreement §§ 1(e) & 1(g); Commercial Viewing

2    Agreement §§ 6 & 11.

3          18.    The Commercial Customer Agreement and the Commercial Viewing

4    Agreement also forbid any recording or duplicating of DIRECTV programming,

5    except by use of an authorized DIRECTV digital video recorder that is physically

6    located at the subscriber's Service Address.  Commercial Customer Agreement

7    §§ 1(e), 1(g) & 7; Commercial Viewing Agreement §§ 6 & 11.

8          19.    Additionally, by accepting the Commercial Customer Agreement and the

9    Commercial Viewing Agreement, commercial subscribers represent, warrant,

10   acknowledge and agree that DIRECTV programming will be exhibited only in a

11   qualifying commercial establishment, as defined in those agreements.  Commercial

12   Customer Agreement § 3; Commercial Viewing Agreement §15.  By way of example,

13   a Private Viewing Establishment, which is one of three types of qualifying

14   commercial establishments, is defined as a commercial establishment "where the

15   viewing [of DIRECTV programming] is in areas that are not accessible to the public

16   and/or the establishment's clientele (such as offices and conference rooms)."

17   Commercial Customer Agreement § 3 (Private Viewing Establishment); *see also*

18   Commercial Viewing Agreement, at 2 (Private Viewing Customers).  To qualify for a

19   Private Office Viewing Account, a subscriber must represent, warrant and agree that

20   (1) DIRECTV programming will only be displayed or exhibited at a commercial

21   establishment at which persons will view the programming in areas that are not

22   accessible to the public, (2) the subscriber will not display or exhibit, and will not

23   permit others to display or exhibit, in any manner whatsoever, any DIRECTV

COMPLAINT

programming in areas accessible to the public and/or common areas, and (3) the subscriber's primary business is neither a satellite master antenna television supported facility containing multiple individual commercial units or in the hospitality and/or restaurant/bar industries.  Commercial Customer Agreement § 3.  Examples of qualifying Private Office Viewing Accounts include private offices wherein the programming is not accessible to the public.

20.     Those agreements also restrict how DIRECTV programming may be exhibited by commercial subscribers.  By way of example, by accepting the Commercial Viewing Agreement, commercial subscribers agree that programming will be exhibited in its entirety, in original form and in the manner provided by DIRECTV, without any modifications, additions or deletions.  Commercial Viewing Agreement § 11.  Commercial subscribers also agree that they will not charge others for viewing DIRECTV programming.  Commercial Customer Agreement § 1(g); Commercial Viewing Agreement § 11.

21.     Commercial subscribers also agree that they will make their DIRECTV satellite receiving equipment available for inspection by DIRECTV or its agents during normal business hours.  Commercial Customer Agreement § 1(m); Commercial Viewing Agreement § 11.

22.     These terms and conditions are required by and/or consistent with DIRECTV's license agreements with the owners of the programming distributed by DIRECTV, and with DIRECTV's broadcast authority from the FCC and other government agencies.

COMPLAINT

1

## DEFENDANT'S WRONGFUL CONDUCT

2       23.    Beginning at a time unknown and continuing to at least February 2015,

3  defendant TVEyes engaged in repeated improper acts and practices for purposes of

4  obtaining DIRECTV satellite television programming by false pretenses, recording

5  that programming on equipment and for purposes not authorized by DIRECTV, and

6  retransmitting and distributing that programming to TVEyes' customers, in violation

7  of DIRECTV's subscriber terms and federal law.

8       24.    DIRECTV has identified nine commercial subscriber accounts believed

9  to have been created and/or used by TVEyes in furtherance of its unlawful operations:

10  Between June 2006 and July 2014, an individual named David Pang, who, upon

11  information and belief, was or is an agent for or employee of TVEyes acting within

12  the scope of his agency or employment, created nine accounts for purported Private

13  Viewing Establishments.

14      25.    A total of 51 Receivers were activated on the nine accounts created or

15  used by defendant TVEyes.  Each Receiver was capable of receiving and decrypting at

16  least 130 channels of DIRECTV programming, consistent with the subscription

17  package listed on the account.

18      26.    In connection to each account it created, defendant TVEyes agreed to be

19  bound by the terms of the Commercial Customer Agreement and the Commercial

20  Viewing Agreement.

21      27.    In connection to each subscriber account it created, defendant TVEyes

22  provided to DIRECTV a Service Address where the satellite receiving equipment

23  would be physically located and where DIRECTV television programming would be

COMPLAINT

received and viewed.  TVEyes provided Service Addresses located in the following cities:

>                Valencia, California
>
>                Providence, Rhode Island
>
>                Fairfield, Connecticut
>
>                Phoenix, Arizona
>
>                Springfield, Massachusetts
>
>                San Diego, California
>
>                Portland, Maine
>
>                Washington, D.C.
>
>                Burlingame, California

28.     With respect to each Service Address listed on the Commercial Customer Agreement or the Commercial Viewing Agreement, defendant TVEyes represented, warranted and certified that the Service Address information was true and correct.

29.     Upon information and belief, some or all of the Service Addresses provided by defendant TVEyes were false and did not disclose the actual location where the DIRECTV satellite receiving equipment was physically located and/or where DIRECTV programming was being received and viewed.  By way of example, DIRECTV has tentatively determined that the Service Address in Valencia, California is a private residence and the Service Address in Burlingame, California is a condominium complex.  Upon information and belief, TVEyes installed the satellite receiving equipment at data centers or other locations not disclosed to DIRECTV.

COMPLAINT

30.     In connection to each subscriber account it created, defendant TVEyes identified for DIRECTV the nature of the business and intended use of DIRECTV television programming.  With respect to each subscriber account, TVEyes represented, warranted and certified that DIRECTV programming would be displayed only for "private viewing" and would not be displayed or exhibited to the public.

31.     Upon information and belief, DIRECTV programming obtained by defendant TVEyes through its use of the nine identified accounts was displayed and/or exhibited to the public or persons not authorized by DIRECTV to receive and view its programming, or was displayed and/or exhibited at types of businesses, such as data centers, that were not eligible to receive DIRECTV programming.

32.     In connection to each subscriber account it created, defendant TVEyes agreed that it would not record or duplicate DIRECTV programming except by use of an authorized DIRECTV digital video recorder, and would not rebroadcast, transmit or distribute that programming to others.

33.     Beginning on or about October 21, 2014, DIRECTV transmitted a set of instructions to the Receivers that had been activated on the nine identified accounts. DIRECTV television programming received and decrypted by those Receivers displayed a unique message that was superimposed over the programming, consisting of a string of letters:  "DOI DOI DOI . . . ."  That message, called an On-screen Display ("OSD"), was visible only on television programming received and decrypted by the 51 Receivers that had been activated for service on the accounts created by defendant TVEyes.

COMPLAINT

34.     DIRECTV television programming displaying the unique OSD was recorded and duplicated by defendant TVEyes, and was rebroadcasted, transmitted and distributed by TVEyes over the Internet and by other means not authorized by DIRECTV.  By way of example, copied below is a screen capture of *The Price Is Right* programming aired on KFMB in San Diego, California, that was broadcasted by DIRECTV on October 21, 2014.  The unique OSD is visible in the lower portion of the screen.



35.     In published statements, defendant TVEyes admits that the company records television programming and distributes that programming to its customers:

> The technology underlying TVEyes products and data feeds consists almost entirely of proprietary software created in-house by TVEyes engineers.  Third party products (such as translation and speech-to-text engines) and customized hardware ***are used to capture, index, analyze, archive and distribute content captured from TV and radio broadcasts.***

http://www.tveyes.com/?page_id=118 (Oct. 27, 2014) (emphasis supplied).

36.     As established by the OSD implemented by DIRECTV, including the example broadcast from KFMB displayed above, the "TV broadcasts" that TVEyes

admits it "capture[s] . . . archive[s] and distribute[s]" include broadcasts from DIRECTV that TVEyes obtained under false pretenses and without valid or proper authorization from DIRECTV.

37.     Defendant TVEyes also enables its customers the ability to receive, view, record, edit and retransmit DIRECTV programming.  These functions exceed the rights granted to TVEyes and violate the terms and conditions of the Commercial Customer Agreement and the Commercial Viewing Agreement.

38.     Upon information and belief, at the time it created each subscriber accounts, defendant TVEyes misrepresented to DIRECTV the intended use of DIRECTV programming.  By way of example, TVEyes contracted for programming service at what it certified were qualifying Private Viewing Establishments when, in truth and fact, TVEyes knew and intended to display and exhibit that programming to TVEyes' customers.

39.     Defendant TVEyes made periodic payments to DIRECTV to continue receiving satellite television service.  At the times and on the dates it made each payment, TVEyes failed to inform DIRECTV that its programming is being recorded on equipment and in a manner not authorized by DIRECTV, and is being distributed to persons who were neither subscribers to DIRECTV nor authorized by DIRECTV to view its programming.

40.     In reliance upon the false representations and omissions by defendant TVEyes, DIRECTV approved the identified subscriber accounts and activated at least 51 Receivers for satellite television programming service.  In further reliance thereon, DIRECTV supplied and continued to supply satellite television programming to what

COMPLAINT

1  DIRECTV believed were valid and proper subscriber accounts. DIRECTV would not

2  have incurred Subscriber Acquisition Costs associated with those accounts, and would

3  not have supplied television programming to TVEyes had TVEyes truthfully disclosed

4  its intended use of the programming.

5      41.  Defendant TVEyes' wrongful conduct has caused significant and

6  irreparable harm to DIRECTV by depriving DIRECTV of subscriber and pay-per-

7  view revenues and other valuable consideration, causing DIRECTV injury in the form

8  of un-recouped Subscriber Acquisition Costs, compromising DIRECTV's security and

9  accounting systems, and interfering with DIRECTV's contractual and regulatory

10  obligations.

11      42.  DIRECTV brings this action to recover damages for the harm it has

12  sustained, to impose a constructive trust upon defendant TVEyes' illegal profits

13  and assets purchased with those profits, and to obtain injunctive relief prohibiting

14  TVEyes' further violations.

15                    **FIRST CLAIM**

16  **Receiving and Assisting Others in Receiving Satellite Transmissions**

17         **in Violation of 47 U.S.C. § 605(a)**

18      43.  Plaintiff DIRECTV repeats and realleges the allegations in all preceding

19  paragraphs as if set forth fully herein.

20      44.  By creating and using subscriber accounts with false information and for

21  improper purposes, installing and maintaining DIRECTV satellite receiving

22  equipment at locations or facilities not authorized by DIRECTV, recording DIRECTV

23  programming on equipment or in a manner not authorized by DIRECTV,

COMPLAINT

1    rebroadcasting and transmitting DIRECTV programming over the Internet and by

2    other means, and distributing DIRECTV programming to persons not authorized by

3    DIRECTV to receive or view its programming, defendant TVEyes received and/or

4    assisted others in receiving DIRECTV's encrypted satellite transmissions, without

5    valid or proper authorization from DIRECTV, in violation of 47 U.S.C. § 605(a).

6         45.    By these same acts, TVEyes divulged and/or published DIRECTV's

7    encrypted satellite transmissions through channels of transmission or reception not

8    authorized by DIRECTV, in violation of 47 U.S.C. § 605(a).

9         46.    DIRECTV is a person aggrieved within the meaning of 47 U.S.C.

10   § 605(d)(6), and is authorized to recover damages and other relief in a civil action

11   pursuant to 47 U.S.C. § 605(e)(3).

12        47.    Defendant TVEyes' violations have injured DIRECTV, including, by

13   way of example, depriving DIRECTV of subscription revenues and other valuable

14   consideration, causing DIRECTV injury in the form of un-recouped Subscriber

15   Acquisition Costs, compromising DIRECTV's security and accounting systems, and

16   interfering with DIRECTV's contractual and regulatory obligations and with

17   DIRECTV's prospective business relations.

18        48.    Defendant TVEyes violated 47 U.S.C. § 605(a) willfully and for

19   purposes of direct or indirect commercial advantage or private financial gain.

20        49.    Defendant TVEyes knew or should have known that receiving or

21   assisting other persons in receiving DIRECTV's encrypted satellite transmissions,

22   without valid or proper authorization from DIRECTV, was and is illegal and

23   prohibited.  Such violations have caused DIRECTV irreparable harm, and DIRECTV

COMPLAINT

1   has no adequate remedy at law to redress any such continued violations.  Unless

2   restrained by this Court, TVEyes will continue to violate 47 U.S.C. § 605(a).

3   **<u>PRAYER FOR RELIEF</u>**

4   Wherefore, plaintiff DIRECTV respectfully requests that this Court grant the

5   following relief:

6   a.   Find that defendant TVEyes' conduct in creating and using subscriber

7   accounts with false information and for improper purposes, installing and maintaining

8   DIRECTV receiving equipment at locations or facilities not authorized by DIRECTV,

9   recording DIRECTV programming on equipment or in a manner not authorized by

10  DIRECTV, rebroadcasting and transmitting DIRECTV programming over the Internet

11  and by other means, and distributing DIRECTV programming to persons not

12  authorized by DIRECTV to receive or view its programming, violates 47 U.S.C. §

13  605(a);

14  b.   Find further that defendant TVEyes' violations of 47 U.S.C. § 605(a)

15  were willful and for purposes of direct or indirect commercial advantage or private

16  financial gain;

17  c.   In accordance with 47 U.S.C. § 605(e)(3)(B)(i), enjoin and restrain

18  defendant TVEyes, and persons or entities controlled directly or indirectly by

19  TVEyes, from creating and using subscriber accounts with false information and for

20  improper purposes, installing and maintaining DIRECTV receiving equipment at

21  locations or facilities not authorized by DIRECTV, recording DIRECTV

22  programming on equipment or in a manner not authorized by DIRECTV,

23  rebroadcasting and transmitting DIRECTV programming over the Internet and by

COMPLAINT

1   other means, and distributing DIRECTV programming to persons not authorized by
2   DIRECTV to receive or view its programming;
3        d.      In accordance with 47 U.S.C. § 605(e)(3)(B)(i), order defendant TVEyes
4   to return to DIRECTV all satellite receiving equipment used to receive and decrypt
5   DIRECTV programming;
6        e.      In accordance with 47 U.S.C. § 605(e)(3)(C)(i) and (ii), award DIRECTV
7   the greater of (1) actual damages suffered by DIRECTV and any profits made by
8   defendant TVEyes that are attributable to the violations alleged herein, or (2) statutory
9   damages of up to $110,000 for each violation of 47 U.S.C. § 605(a);
10       f.      In accordance with 47 U.S.C. § 605(e)(3)(C)(i), declare that defendant
11  TVEyes holds in trust, as constructive trustee for the benefit of DIRECTV, all
12  "profits" received by TVEyes from its unauthorized reception and use of DIRECTV
13  satellite television programming;
14       g.      In accordance with 47 U.S.C. § 605(e)(3)(B)(iii), order defendant
15  TVEyes to pay to DIRECTV all of its costs, reasonable attorneys' fees and
16  investigative fees;
17       h.      Award DIRECTV pre-Complaint interest, and pre- and post-judgment
18  interest on all damages, from the earliest date permitted by law at the maximum rate
19  permitted by law; and
20  ///
21  ///
22  ///
23

COMPLAINT

i.      For such additional relief as the Court deems just and equitable.

DATED:  June 9, 2015.

**BAKER MARQUART LLP**

By:    /s/ Ryan Baker
Ryan Baker (SBN 214036)
   rbaker@bakermarquart.com


**YARMUTH WILSDON PLLC**

By:    /s/ Scott T. Wilsdon
Scott T. Wilsdon (applying *pro hac vice*)
   wilsdon@yarmuth.com
Jeremy E. Roller (applying *pro hac vice*)
   jroller@yarmuth.com

Attorneys for Plaintiff DIRECTV, LLC

COMPLAINT